# Exhibit A

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

LOAN #:

FHA Case No.

MIN:

## NOTE

Massachusetts

DECEMBER 20, 2013                Enfield,                          CONNECTICUT
[Date]                           [City]                            [State]

28 Jennings Street, Springfield, MA 01119
[Property Address]

REDACTED

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means FIRST HOME MORTGAGE CORPORATION DBA FIRST HOME MORTGAGE SERVICES, A CORPORATION

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of ******ONE HUNDRED THENTY SEVEN THOUSAND FIVE HUNDRED FORTY SIX AND NO/100************************** Dollars (U.S.  $127,546.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  FOUR                               percent
(   4.000%   ) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the        1ST        day of each month beginning on  FEBRUARY 1, 2014.     Any principal and interest remaining on the        1ST        day of JANUARY, 2044     will be due on that date, which is called the "Maturity Date."
**(B) Place**
Payment shall be made at
5355 NOTTINGHAM DR., #130
BALTIMORE, MD 21236

or at such place as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S.        $609.92.    This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]    ☐ Graduated Payment Allonge       ☐ Growing Equity Allonge
                          ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Lender makes a partial prepayment there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY
**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of        15        calendar days after the payment is due, Lender may collect a late charge in the amount of  THREE                        percent (        3.000% ) of the overdue amount of principal and interest.

**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Massachusetts Fixed Rate Note - 10/95
Online Documents, Inc.                        Page   1   of  2

Initials: 
MA0700NT 1009

ORIGINAL

LOAN #:

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**
Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Dishanda Callands-Robinson

Wells Fargo
PAY TO THE ORDER OF  ~~Wells Fargo Bank, N.A.~~

WITHOUT RECOURSE
FIRST HOME MORTGAGE CORPORATION          **DBA First Home Mortgage Services**
A CORPORATION
BY: _____
ASSISTANT VICE PRESIDENT
TONI RHODES

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0155

1V3-13-17

[inverted text:]
WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO, 94 4h

FHA Massachusetts Fixed Rate Note - 10/95                    Page ___ of   2                    MA8700NT  1009
—Online-Documents, Inc.

DAVID C. PE...  ...  ...CE PRESIDENT
0SS

**ORIGINAL**

DBA First Horizon Mortgage Services

TONI RHODES.

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY
SAMUEL C. SHIBLEY, SENIOR VICE PRESIDENT
0165-

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY
DAVID C. PETERSON, SENIOR VICE PRESIDENT
065

# Exhibit B

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

Bk 20143 Pg477  $79910
12-20-2013 @ 03:59p

# Dec
wells

REDACTED

After Recording Return To:
FIRST HOME MORTGAGE SERVICES
ATTN: POST CLOSING DEPARTMENT
5355 NOTTINGHAM DR., #130
BALTIMORE, MD 21236

Escrow No.:
LOAN #:
——————————— [Space Above This Line For Recording Data] ———————————

State of Massachusetts

## MORTGAGE

FHA Case No.

MIN:

THIS MORTGAGE ("Security Instrument") is given on  DECEMBER 20, 2013.    The
Mortgagor is  DISHANDA CALLANDS-ROBINSON, SOLE OWNERSHIP

("Borrower").
"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

FIRST HOME MORTGAGE CORPORATION DBA FIRST HOME MORTGAGE SERVICES, A
CORPORATION

("Lender") is organized and
existing under the laws of  MARYLAND,
and has an address of 5355 NOTTINGHAM DR., #130, BALTIMORE, MD 21236.

   "Mortgage Broker" is NO MORTGAGE BROKER
Mortgage Broker's post office address is NO MORTGAGE BROKER

and Mortgage Broker's license number is NO MORTGAGE BROKER
   "Mortgage Loan Originator" is Keith Russell

FHA Massachusetts Mortgage - 4/96
Online Documents, Inc.            Page  1  of  6

Initials: 
MAEFHADE 1212

LOAN #: ███████

Mortgage Loan Originator's post office address is 100 Medway Road Suite 202, Milford, MA 01757

and Mortgage Loan Originator's license number is ML0957512 .
Borrower owes Lender the principal sum of *****ONE HUNDRED TWENTY SEVEN THOUSAND FIVE HUNDRED FORTY SIX AND NO/100************ Dollars (U.S.    $127,546.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on JANUARY 1, 2044.                    This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in Hampden                    County, Massachusetts:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
APN #: 07105/0006

which has the address of 28 Jennings Street, Springfield,
                                                                          [Street, City],
Massachusetts   01119              ("Property Address");
              [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
   1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   2.  Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."
   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate

FHA Massachusetts Mortgage - 4/96
Online Documents, Inc.                    Page   2   of   6                    Initials: ███
                                                                                       MAEFHADE  1212



LOAN #: 

Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

:If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note,

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

FHA Massachusetts Mortgage - 4/96
Online Documents, Inc.

Page   3   of   6

Initials:

MAEFHADE  1212

LOAN #: [redacted]

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**
    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
       (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
       (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
       (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
       (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
    **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings

FHA Massachusetts Mortgage - 4/96
Online Documents, Inc.                    Page  4  of  6

Initials: 
MAEFHADE 1212

LOAN #:

against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by**

FHA Massachusetts Mortgage - 4/96
Online Documents, Inc.

Page 5 of 6

Initials: _____

MALFHADE 1212

LOAN #: ████████████

applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider   ☐ Growing Equity Rider   ☐ Planned Unit Development Rider
☐ Graduated Payment Rider   ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Dishanda Callands-Robinson

Commonwealth of MASSACHUSETTS
County of _____HAMPDEN_____, ss SPRINGFIELD

On this 20 day of DECEMBER, 201Y, before me, the undersigned notary public, personally appeared Dishanda Callands-Robinson, proved to me through satisfactory evidence of identification, which were _____MA   D.L._____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that (he) (she) signed it voluntarily for its stated purpose.

(as partner for _____, a partnership)
(as _____ for _____, a corporation)
(as attorney in fact for _____, the principal)
(as _____ for _____, (a) (the) _____)

Notary signature _____

My commission expires _____



**KEITH K. FULLER**
Notary Public
Commonwealth of Massachusetts
My Commission Expires
November 21, 2019

FHA Massachusetts Mortgage - 4/96
Online Documents, Inc.          Page  6  of  6          MAEFHADE 1212

# SCHEDULE "A"

The land in Springfield, Hampden County, Massachusetts, being known and designated as Lots #258 (two hundred fifty-eight) through #262 (two hundred sixty-two) inclusive, as shown on a plan of lots entitled, Glenwood Villa and recorded in the Hampden County Registry of Deeds, Book of Plans A, Page #30, said lots bounded and described in one parcel as follows:

SOUTHERLY: by Jennings Street: as shown on said plan, one hundred (100) feet;

WESTERLY: by Lot #263 (two hundred sixty-three) as shown on said plan, eighty (80) feet;

NORTHERLY: by Lots #281 (two hundred eighty-one) through #285 (two hundred eighty-five) inclusive as shown on said plan, one hundred (100) feet;

EASTERLY: by lot #257 (two hundred fifty-seven) as shown on said plan, eighty (80) feet.

UNDER AND SUBJECT to any existing covenants, easements, encroachments, conditions, restrictions, and agreements affecting this property.

TOGETHER WITH all and singular the improvements, ways, streets, alleys, passages, water, watercourses, right, liberties, privileges, hereditaments, and appurtenances whatsoever hereto belonging or in anywise appertaining and the reversions and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantor in law, equity, or otherwise howsoever, of and to the same and every part thereof.

Being the Same premises as conveyed just prior hereto.

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

# Exhibit C

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

Bk 21609 Pg552 #14959
03-22-2017 @ 10:42a

# REDACTED

This Document; Prepared By:
TYLER HULS
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

When Recorded Mail To:
FIRST AMERICAN TITLE
ATTN: JAVIER TONY VARGAS
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707

Source of Title:  INSTRUMENT NO. 79909  BOOK 20143, AT PAGE(S)  475
Tax/Parcel #: 071050006

_____ [Space Above This Line for Recording Data] _____

| | |
|---|---|
| Original Principal Amount: $127,546.00 | Investor Loan No.: |
| Unpaid Principal Amount: $121,211.19 | Loan No: (scan barcode) |
| New Principal Amount $128,878.02 | |
| Total Cap Amount: $7,666.83 | |

## HOME AFFORDABLE MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: FEBRUARY 17, 2017
Borrower ("I"):[1] DISHANDA CALLANDS-ROBINSON
Borrower Mailing Address: 28 JENNINGS STREET, SPRINGFIELD, MASSACHUSETTS 01119
Lender or Servicer ("Lender"): WELLS FARGO BANK, N.A.
Lender or Servicer Address: 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") DECEMBER 20, 2013 and the Note
("Note") date of DECEMBER 20, 2013

Property Address ("Property"): 28 JENNINGS STREET, SPRINGFIELD, MASSACHUSETTS 01119

_____

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate
Wells Fargo Custom FHA Home Affordable Modification Agreement

Bk 21609 Pg553 #14859

Legal Description:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Prior instrument reference: Recorded on DECEMBER 20, 2013 in INSTRUMENT NO. 79910 BOOK
20143  PAGE 477, of the Official Records of HAMPDEN COUNTY, MASSACHUSETTS

This FHA Home Affordable Modification Agreement ("Agreement") is made on FEBRUARY 17, 2017 by and
between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender.
Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the
Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the
Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except
as discharged in Bankruptcy, and are properly secured by the Property. Nothing in this Agreement shall be
understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under
the Loan Documents.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then
this Agreement will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2)
the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been
amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined
have the meaning given to them in the Loan Documents.

1.  Borrower Representations.

    I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the terms of the
        Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to
        make the monthly mortgage payments now or in the near future; I did not intentionally or
        purposefully default on the terms of the Loan Documents in order to obtain a loan modification;

    B.  I certify the Property is not condemned and is not vacant without the intent to re-occupy;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan
        Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required
        to disclose child support or alimony unless I chose to rely on such income when requesting to
        qualify for the FHA Home Affordable Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection
        with this Agreement, including the documents and information regarding my eligibility for the
        Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and,

2.  Acknowledgements and Preconditions to Modification.

Wells Fargo Custom FHA Home Affordable Modification Agreement



Page 2

Bk 21609 Pg554 #14859

I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. If included, the undersigned borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

3. The Modification.

If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on MAY 1, 2017 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make all required payments as a precondition to this modification under a workout plan or trial period plan, the Lender has the right to reject this Agreement even if I have signed and returned this Agreement. The first modified payment will be due on MAY 1, 2017.

A. The new Maturity Date will be: APRIL 1, 2047.

B. The modified principal balance of my Note will include amounts and arrearages that will be past due as of the Modification Effective Date. This does not include unpaid late charges, valuation, property preservation and other charges not permitted under the terms of the FHA Home Affordable Modification Program. Permitted amounts and arrearages may include unpaid and deferred interest, fees, escrow advances and other costs less any amounts paid to the Lender but not previously credited to my Loan, collectively "Unpaid Amounts"; the portion of Unpaid Amounts capitalized is $7,666.83. The new principal balance of my Note will be $128,878.02 (the "New Principal Balance") which includes the capitalized Unpaid Amounts. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 3.6250% will begin to accrue on the Interest Bearing Principal Balance as of APRIL 1, 2017 and the first new monthly payment on the Interest Bearing Principal Balance will be due on MAY 1, 2017. Interest due on each monthly payment will be calculated by multiplying the New Principal/Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12).   My payment schedule for the modified Loan is as follows:

Wells Fargo Custom FHA Home Affordable Modification Agreement

Page 3

Bk 21609 Pg555 #14859

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 360 | 3.6250% | 04/01/2017 | $587.75 | $426.97 | $1,014.72 | 05/01/2017 |

*After your modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth.

4. **Additional Agreements.**

I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Mortgage Assistance that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if

Wells Fargo Custom FHA Home Affordable Modification Agreement

Page 4

Bk 21609 Pg556 #14859

any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this section. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12

Bk 21609 Pg557 #14859

monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.   That, as of the Modification Effective Date, I understand that the Lender may only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I

Wells Fargo Custom FHA Home Affordable Modification Agreement 

elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the FHA Home Affordable Modification Program.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (a) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (b) companies that perform support services for the FHA Home Affordable Modification Program; and (c) any HUD certified housing counselor.

N. I agree, that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this section shall be referred to as "Documents." I agree to deliver the Documents within fifteen (15) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this modification, hereby grants Wells Fargo Home Mortgage , as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

Q. Borrower must deliver to Wells Fargo Home Mortgage a properly signed Modification Agreement by MARCH 4, 2017. If Borrower does not return a properly signed Modification Agreement by this date and make all payments pursuant to the trial plan agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If Borrower returns the properly signed Modification Agreement by said date, payments pursuant to the loan Modification Agreement are due as outlined in this Modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan Modification Agreement if Borrower fails to make the first payment due pursuant to this loan Modification Agreement.

Bk 21609 Pg559 #14859

All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document may not be accepted and another copy of the Agreement may be sent to the Borrower to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

Bk 21609 Pg560 #14859

In Witness Whereof, I have executed this Agreement.

Borrower: DISHANDA CALLANDS-ROBINSON                                                    Date 3/2/17

Borrower:                                                                                Date

Borrower:                                                                                Date

Borrower:                                                                                Date

[Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGMENT**

STATE OF MASSACHUSETTS
COUNTY OF _Hampden_

On this _2nd_ day of _March_, 20 _17_, before me personally appeared **DISHANDA CALLANDS-ROBINSON** to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

Notary Public

Print Name: _William K. Miller_

Commission expires _March 9, 2018_

WILLIAM K. MILLER
Notary Public
Massachusetts
Commission Expires Mar 9, 2018

Wells Fargo Custom FHA Home Affordable Modification Agreement

Page 9

Bk 21609 Pg561 #14859

In Witness Whereof, the Lender have executed this Agreement.

WELLS FARGO BANK, N.A.

**Etse Nomedji**
**Vice President Loan Documentation**

By ~~Etse Nomedji~~          (print name)       3/16/17     Date
                                        (title)

_____ [Space Below This Line for Acknowledgments] _____

LENDER ACKNOWLEDGMENT

STATE OF MINNESOTA

COUNTY OF DAKOTA

This instrument was acknowledged before me    3.16.17    (date) by

ETSE NOMEDJI      (name(s) of person(s)) as

**Vice President Loan Documentation**    (type of authority, e.g., officer, trustee, etc.) of WELLS

FARGO BANK, N.A. (name of party on behalf of whom the instrument was executed).

Notary Public

Printed Name:   Isabel Cristina Brown

My Commission Expires:

01-31-21

ISABEL CRISTINA BROWN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2021

Wells Fargo Custom FHA Home Affordable Modification Agreement

Page 10

Bk 21609 Pg562 #14859

## EXHIBIT A

BORROWER(S): DISHANDA CALLANDS-ROBINSON

LOAN NUMBER: (scan barcode)

LEGAL DESCRIPTION:

BEING KNOWN AND DESIGNATED AS LOTS #258 (TWO HUNDRED FIFTY-EIGHT) THROUGH #262 (TWO HUNDRED SIXTY-TWO) INCLUSIVE, AS SHOWN ON A PLAN OF LOTS ENTITLED, GLENWOOD VILLA AND RECORDED IN THE HAMPDEN COUNTY REGISTRY OF DEEDS, BOOK OF PLANS A, PAGE #30, SAID LOTS BOUNDED AND DESCRIBED IN ONE PARCEL AS FOLLOWS:

SOUTHERLY: BY JENNINGS STREET: AS SHOWN ON SAID PLAN, ONE HUNDRED (100) FEET;

WESTERLY: BY LOT #263 (TWO HUNDRED SIXTY-THREE) AS SHOWN ON SAID PLAN, EIGHTY (80) FEET;

NORTHERLY: BY LOTS #281 (TWO HUNDRED EIGHTY-ONE) THROUGH #285 (TWO HUNDRED EIGHTY-FIVE) INCLUSIVE AS SHOWN ON SAID PLAN, ONE HUNDRED (100) FEET;

EASTERLY: BY LOT #257 (TWO HUNDRED FIFTY-SEVEN) AS SHOWN ON SAID PLAN, EIGHTY (80) FEET.

BEING THE SAME PROPERTY CONVEYED TO DISHANDA CALLANDS-ROBINSON FROM JV PROPERTIES, INC BY DEED DATED N/A AND RECORDED ON 12/20/2013 IN THE REGISTER OF DEED FOR HAMPDEN COUNTY, MASSACHUSETTS IN DEED INSTRUMENT 79909 DEED BOOK: 20143, PAGE: 475

ALSO KNOWN AS: 28 JENNINGS STREET, SPRINGFIELD, MASSACHUSETTS 01119

Wells Fargo Custom FHA Home Affordable Modification Agreement

Page 11

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS
E-RECORDED

# Exhibit D

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

Bk 20698 Pg446 #23405
05-12-2015 @ 08:30a

RECORDING REQUESTED BY:
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD
SUITE 200
EAGAN MN 55121
AND WHEN RECORDED MAIL TO:
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN 55121-4400
ATTN: ASSIGNMENT TEAM

REDACTED

---

## ASSIGNMENT OF MORTGAGE

MERS MIN#: ▓▓▓▓▓▓▓    Phone #:▓▓▓▓▓▓▓

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST HOME MORTGAGE CORPORATION, DOING BUSINESS AS FIRST HOME MORTGAGE SERVICES, ITS SUCCESSORS AND ASSIGNS P.O. BOX 2026, FLINT, MI 48501 1901 E VOORHEES ST STE C DANVILLE, IL 61834** , by these presents does convey, grant, bargain, sell, assign, transfer and set over to: **WELLS FARGO BANK, NA , 1 HOME CAMPUS , DES MOINES, IA 50328** , the described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $127546.00 is recorded in the State of **MASSACHUSSETS** , County of **Hampden** Official Records, dated 12/20/2013 and recorded on 12/20/2013 , as Instrument No. 79910 , in Book No. 20143 , at Page No. 477 .
Original Mortgagor: **DISHANDA CALLANDS-ROBINSON, SOLE OWNERSHIP**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST HOME MORTGAGE CORPORATION DOING BUSINESS AS FIRST HOME MORTGAGE SERVICES, ITS SUCCESSORS AND ASSIGNS**
Property Address: 28 JENNINGS STREET SPRINGFIELD, MA 01119
Property Address: 28 JENNINGS STREET SPRINGFIELD MA 01119

Date: 05/11/2015
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST HOME MORTGAGE CORPORATION, DOING BUSINESS AS FIRST HOME MORTGAGE SERVICES, ITS SUCCESSORS AND ASSIGNS**
By:

*[signature]*

SCOTT GERALD HEURKINS, Assistant Secretary

STATE OF MN
COUNTY OF Dakota } s.s.

On 05/11/2015 , before me **JANET L JONES** , Notary Public, personally appeared **SCOTT GERALD HEURKINS** , **Assistant Secretary** personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

*[signature]*
JANET L JONES, Notary Public
Commission #: 20349147
My Commission Expires: 01/31/2017

JANET L. JONES
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS
E-RECORDED

eRecorded