## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

### WESTERN DIVISION

In re:                                              **Case No. 18-30938-EDK**
                                                    **Chapter 7**

**Dishanda Callands Robinson**


Debtor          /

## CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND TEAMWORK REALTY GROUP, LLC AS REAL ESTATE BROKER

Now comes Gary Weiner, Chapter 7 Trustee (the "Trustee") for the above referenced bankruptcy estate of Dishanda Callands Robinson  (the "Debtor") by and through the undersigned counsel, hereby files this Application for entry of an order authorizing employment of  (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness at *Exhibit A* (the "BKRES Affidavit") and (2) TEAMWORK REALTY GROUP, LLC  ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at *Exhibit B* (the "Listing Agent Affidavit").  In support thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Trustee requests approval to retain BKRES and local licensed Listing Agent (individually and collectively referred to as "Broker or Brokers"), at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear,

1

(2) waive the resulting deficiency claim and (3) pay an 11 U.S.C. § 506 surcharge to provide a carve out for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as an 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carve out for the benefit of the estate with proceeds from the private sale of an asset in which the estate has no equity and (2) expects to obtain secured creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) (2) (A), (M), (N), and (O).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3.      On October 27, 2018, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4.      Thereafter, on October 27, 2018, the Trustee was appointed as the Chapter 7 trustee in this case.

5.      The Trustee conducted the 11 U.S.C. § 341 meeting on December 18, 2018.

6.      The Debtor, Dishanda Callands Robinson is the sole owner of real property located at **28 Jennings Street Springfield, MA 01119** (the "Property").

7.      The Debtor Dishanda Callands Robinson has no equity in the Property.  The Debtor's schedules reflect that the Property is currently worth $155,000.00 but is subject to a first mortgage lien (the "Senior Mortgage") in favor of Wells Fargo Home Mortgage (the "Secured Creditor") in an amount exceeding $134,500.00.  The Debtor stated at her meeting of creditors held on December 18, 2018 that she is moving out of the Property.  The Debtor indicated that both the furnace and roof need repairs and she does not have the funds necessary for said repairs.

8.      The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES and Local Agent, shall not participate in the sale and purchase of any estate property except as hired Brokers:

   a.  sell the Property to whichever third-party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

   b.  buy the Property from the Debtor's estate if (and only if) no such offer is made[2];

   c.  release the Senior and Junior Mortgages and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

   d.  If the Property is sold to a third party, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate;

   e.  If Secured Creditor purchases property, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 2% real estate brokerage commission to BKRES, of which a $500.00 fee will be paid to Listing Agent, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9.      The Trustee also has determined it to be in the best interest of the

Debtor's estate and all creditors to request authorization to engage Brokers BKRES and Listing

Agent to provide reasonable and necessary property preservation, maintenance, and upkeep

services to the subject estate Property and to reimburse the Brokers in a maximum amount not to

exceed $500.00 for any approved reasonable, necessary out-of-pocket costs and expenses incurred

by Brokers associated with property preservation, maintenance, and upkeep of the subject Property

in connection with a potential sale, upon the availability of funds from the estate, without the need

for further Order.

10.    Trustee expects BKRES and Listing Agent to obtain Secured Creditor's

full, final and unconditional Consent and the Trustee will then file a motion seeking an order

approving the private sale of the Property (the "Motion to Approve Sale") within several months

of the entry of the order sought by this Application.

11.    By this Application, the Trustee requests authority pursuant to Sections 327,

328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to **provide the**

**necessary professional assistance and representation required by the Trustee to fulfill the**

**Trustee's duties pursuant to 11 U.S.C. § 704 in order to** procure Secured Creditor's Consent,

(b) engage Brokers BKRES and Listing Agent to provide reasonable and necessary property

preservation, maintenance, and upkeep services to the subject estate Property to facilitate the sale

of the Property for the benefit of the Secured Creditor(s) and bankruptcy estate, (c) reimburse

Brokers in the maximum amount not to exceed $500.00 for any approved, out-of-pocket costs

incurred by Brokers associated with property preservation, maintenance, and upkeep of the subject

Property in connection with a potential sale, upon the availability of funds from the estate, without

the need for further Order, and (d) approve Secured Creditor's payment of the fees described herein

and below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

<u>APPLICATION</u>

12.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that a Trustee "with the court's approval, may employ or authorize the employment of a professional person under section 327…on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a) (1).

13.    As further described in the materials attached to their affidavits, BKRES[3] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity. An expedited sale of the estate Property securing an allowed secured claim in this case pursuant to 11 U.S.C. § 363 will enhance the bankruptcy relief sought by the Debtor(s), provide a recovery of value for the bankruptcy estate that will result in a meaningful distribution to unsecured creditors, and provide direct equitable benefits to the Secured Creditor in the following ways:

a.    in exchange for an expedited free and clear sale and realization of the current fair market value of the Property by the Secured Creditor, the Debtors' estate will be released

---

[3] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

from the Senior <u>and Junior Mortgages</u> and any deficiency claims89* resulting from the sale;

b.        an expedited free and clear sale of the Property will provide a loss mitigation option that enables the Secured Creditor and Debtors to avoid the substantial expense of foreclosure proceedings and the damaging impact of foreclosure on the financial recovery of the Debtors and their ability to obtain future credit;

c.        an expedited free and clear sale of the Property will provide a negotiated cash payment as a meaningful recovery of value for the bankruptcy estate and the unsecured creditors;

d.        an expedited free and clear sale of the Property will eliminate the need for a foreclosure sale and enable the Secured Creditor(s) to limit their expenses to legal costs, property preservation costs, insurance, and taxes; and,

e.        the Secured Creditor's consent to the sale of the Property will enable the Trustee to use the forces of a free market to establish the true fair market value of the Property for the benefit of all interested and affected parties.

14.        The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtors' estate but can only be achieved if Secured Creditor's Consent is first obtained.  That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

1.     15.     In no event will the estate have any obligation to pay BKRES or Listing Agent for their services, or to pay for customary title and closing services. The terms of the BKRES Agreement and Listing Agreement and this Application provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold[4].

16.     BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

17.     The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

18.     BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as *Exhibit A* is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent, or a buyer's Agent, if applicable.

19.     Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as *Exhibit B* is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split

---

[4] In the event that the Property is not sold to a third party, the Brokers will be paid in accordance with the non-third party sale terms of the BKRES Agreement and Listing Agreement.

or share its fee with any individual or entity other than BKRES, or a buyer's Agent, if applicable.

## CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement and this Application pursuant to 11 U.S.C. §§§ 327, 328(a) and 330.

Date:

Respectfully submitted,
Gary M. Weiner, Chapter 7 Trustee for
The Estate of Dishanda Callands
Robinson


By      /s/ Gary M. Weiner
Gary M. Weiner, Esq. BBO# 548341
Weiner Law Firm, P.C.
1441 Main St Suite 610
Springfield, MA 01103
gweiner@weinerlegal.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

```
                                    )
                                    )
In re                               )        Chapter 7
                                    )        Case No.  18-30938-EDK
DISHANDA CALLANDS ROBINSON          )
                                    )
                    Debtor          )
                                    )
```

EXHIBIT
tabbies®
A

## AFFIDAVIT OF ARTHUR RICHTON IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND TEAMWORK REALTY GROUP, LLC TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

```
STATE OF MASSACHUSETTS      )
                            )
COUNTY OF Hampden           )
```

Arthur Richton, being duly sworn, says:

1.      I am a real estate agent duly licensed by the State of Massachusetts.

2.      I am an agent of TEAMWORK REALTY GROUP, LLC a Massachusetts Corporation, with corporate offices located at 175 Dwight Rd Ste 204 Longmeadow, MA 01106 ("Listing Agent").

3.      I am familiar with the Application to Retain TEAMWORK REALTY GROUP, LLC, filed by the Trustee ("Application") and the property described therein.

4.      I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 28 Jennings Street Springfield, MA 01119 (the "Property").

5.      TEAMWORK REALTY GROUP, LLC has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

1

of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

4.      A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

5.      That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

6.      That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this 4 day of January 2019.

                                                    Patrick Butler
                                                    Broker-in-Charge


The foregoing instrument was sworn to and subscribed before me this 4 day of January, 2019, by Patrick Butler who provided identification or is personally known to me and who did take an oath.

                                        NOTARY PUBLIC

                                        Notary Public, State of Florida



                                        My Commission Expires



Notary Public State of Florida
Sharon Beatrice Sirois
My Commission FF 196000
Expires 02/04/2019

## SCHEDULE I

BK Global Real Estate Services is a licensed real estate brokerage by the State of Florida, located at 1095 Broken Sound Parkway N.W., Suite 100, Boca Raton, Florida, 33487.

BK Global Real Estate Services has a strong background and extensive experience in dealing with the mortgage servicing industry and is considered an expert in assisting in the negotiations with secured creditors whose debt is in excess of the market value of the real property and in negotiating short sales.

BK Global Real Estate Services has been providing real estate services to Chapter 7 bankruptcy trustees since 2014.

BK Global Real Estate Services has developed a process to assist Chapter 7 trustees in the sale of over-encumbered real estate to obtain the consent of the secured creditor to allow the Chapter 7 trustee to sell the real property and to assist the Chapter 7 trustee in negotiating a carve out for the bankruptcy estate that will provide a meaningful distribution to the unsecured creditors..

BK Global Real Estate Services is to be retained by the Chapter 7 trustee pursuant to 11 U.S.C. § 327. The first step is for BK Global Real Estate Services to assist the Chapter 7 trustee in obtaining the consent of the secured creditor to allow the Chapter 7 trustee to sell the secured real estate. Those negotiations will include establishing a carve-out of the sale proceeds to the bankruptcy estate that will provide a meaningful distribution to unsecured creditors.

In addition, a carve out will be established to pay a real estate commission to BK Global Real Estate Services and a local real estate licensed broker. In addition, as part of the negotiations, the secured creditor will be required to waive the filing of any deficiency claim.

Once the Court has approved the retention of BK Global Real Estate Services and the local real estate licensed broker, then the real property will be listed for sale at an agreed listing price by the secured creditor.

A motion will be filed to approve the settlement and compromise reached between the Chapter 7 trustee and the secured creditor.

BK Global Real Estate Services has successfully assisted Chapter 7 trustees in 33 court districts in the consented program. BK Global Real Estate Services does this by achieving the highest sale prices for properties as opposed to the more common "discounted sale" often presented to secured creditors by less experienced service providers. The transaction is never consummated unless the carve-out percentage or fee is sufficient to provide a meaningful distribution to unsecured creditors. BK Global Real Estate Services has standards in the mortgage industry whereby all parties can have a mutually beneficial outcome to the sale. The sale of over-encumbered real estate in bankruptcy presents a superior outcome to all parties.

- Unsecured creditors achieve a meaningful distribution on many more bankruptcy cases than they do on 'no asset' cases;

- The Chapter 7 trustee is able to conduct these transactions in a very cost-effective manner substantiating the carve-out amounts generated in these sales; and

- Secured creditors achieve more favorable recovery than they would via foreclosure including minimized compliance risk.

Page 4-2 of the Handbook for Chapter 7 Trustee states that by virtue of 11 U.S.C. § 323(a) the trustee is a representative of the estate. Further, the handbook states, "The trustee is a fiduciary charged with protecting the interest of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority and non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property."

BK Global Real Estate Services is a licensed Real Estate Broker and acts in the capacity as a licensed agent/broker. As a member of the real estate professional association, BK Global Real Estate Services is permitted to work with local brokers and share fees for work conducted. Section 504(b) of the Bankruptcy Code permits the compensation BK Global Real Estate Services receives for work conducted on a case.

BK Global Real Estate Services has developed a nationwide network of licensed real estate brokers that are trained in the sale of over-encumbered real estate in bankruptcy. BK Global Real Estate Services co-lists the real estate with one of our local trained licensed brokers. The trustee hires both BK Global Real Estate Services and the local broker to perform the required services. The listing commission is split between BK Global Real Estate Services and the local broker.

For these fees, both BK Global Real Estate Services and the local broker share in the duties that are required to conduct a consented sale in bankruptcy.

BK Global Real Estate Services' services include, but are not limited to, the following:

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues;
- Advising the trustee of any issues and discuss potential resolutions;
- Conducting the resolutions under the trustee's direction;
- Assisting the trustee in the collection of documents and information for employment;
- Making contact with the secured creditor(s);
- Notifying them of the upcoming sale and identifying servicer requirements;
- Assisting the trustee in establishing market value and negotiating with the servicer an acceptable sales price and establishing a carve-out;
- Development of online marketing, email campaign and full nationwide marketing services;
- Conducting on online sale;
- Use of the technology platform;

- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee;
- Managing contract requirements such as inspections, appraisals and HOA applications;
- Coordinating closings and assisting the trustee in the collection of required information for court filing; and
- Closing the transaction and ensure the estate has received the appropriate funds.

Local broker services include, but are not limited to:

- Inspecting the property and completing a broker's price opinion;
- Listing the property in the multiple listing service (MLS); and
- Posting a for sale sign in the yard and coordinating showings.

U.S. Bankruptcy Court Districts where BK Global Real Estate Services conducted Consented Sales:

- Eastern District of Arkansas
- Central District of California
- Eastern District of California
- Southern District of California
- District of Colorado
- District of Connecticut
- Middle District of Florida
- Southern District of Georgia
- District of Hawaii
- Northern District of Illinois
- Northern District of Indiana
- Southern District of Indiana
- Western District of Kentucky
- Eastern District of Louisiana
- Middle District of Louisiana
- Western District of Louisiana
- District of Massachusetts
- District of Maryland
- Eastern District of Michigan
- Eastern District of North Carolina
- District of New Jersey
- District of Nevada
- Eastern District of New York
- Northern District of Ohio
- Southern District of Ohio
- District of Oregon
- Eastern District of Pennsylvania

- Middle District of Pennsylvania
- Western District of Pennsylvania
- Northern District of Texas
- Western District of Texas
- Western District of Washington

EXHIBIT

B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
|  | ) | Case No. 18-30938-EDK |
| DISHANDA CALLANDS ROBINSON | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND TEAMWORK REALTY GROUP, LLC TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

The undersigned, Patrick Butler ("Declarant") hereby states:

1.      I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.      Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.      To the best of my knowledge: (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14)

6.       Neither I nor any member of TEAMWORK REALTY GROUP, LLC hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7.       To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8.       I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Arthur Richton of
TEAMWORK REALTY GROUP,
LLC

The foregoing instrument was sworn to and subscribed before me this 26ᵗʰ day of December, 2018.

NOTARY PUBLIC

_____
Notary Public, State of
Massachusetts

_____
Type, Stamp, or Print Name as
Commissioned

NATASHA E. ROACH
Notary Public
Commonwealth of Massachusetts
My Commission Expires December 6, 2022

2

**EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT** #709 (Page 1 of 2)



I/We <u>Gary Weiner, Chapter 7 Trustee for the estate of Dishandra Robinson</u>

("SELLER"), hereby grant to <u>Arthur M. Richton of Teamwork Realty Group, LLC</u>                                        , a real estate broker licensed under the laws of the Commonwealth of Massachusetts ("BROKER"), the exclusive right to sell the property described as <u>28 Jennings Street, Springfield, MA. 01119-1508</u>

and recorded in the <u>Hampden</u>                        County Registry Of Deeds at Book <u>20143</u>           , Page <u>475</u>

("PROPERTY") on the following terms and conditions:

**1. Seller's Duties And Representations.** The BROKER is granted the exclusive right to sell the PROPERTY, as the SELLER'S agent, during the term of the Agreement and the SELLER agrees to refer all inquiries to the BROKER, to cooperate in marketing the PROPERTY, including completing, lead paint (if property built before 1978) and other forms. If the PROPERTY is sold to a buyer procured by the BROKER, by the SELLER or by anyone else, the fee described in paragraph 4 shall be due. The BROKER is authorized, but is not required: (a) to offer compensation to other licensed brokers as buyer's agents or facilitators; (b) to place a listing for the PROPERTY in any multiple listing service; (c) to place a sign on the PROPERTY; (d) to photograph and advertise the PROPERTY in such media as the BROKER may select; and (e) to place a lock box on the PROPERTY. The SELLER authorizes the BROKER to disclose to prospective buyers all information about the PROPERTY provided to the BROKER by the SELLER, all of which the SELLER represents to be accurate. **The SELLER acknowledges receipt of a Mandatory Licensee-Consumer Relationship Disclosure form.** According to the Code of Ethics and Standards of Practice of the National Association of REALTORS®, SELLER has been advised of (1) the broker's general company policies regarding cooperation with and compensation to subagents, buyer's agents and other licensees; (2) the fact that a buyer's agent, even if compensated by the listing broker or seller will represent the interest of the buyer; and (3) any potential for the listing broker to act as a disclosed dual agent on behalf of the seller and buyer. The SELLER agrees to comply with all applicable fair housing laws. Seller is aware that there is a risk of injury to persons viewing the Property as well as a risk of loss or damage to property of the seller during a showing or open house, whether the showing is accompanied by the Broker, via lockbox or otherwise. Seller has the responsibility to prepare the Property for marketing to minimize the likelihood of injury, damage and loss. Seller agrees to indemnify, defend and hold Broker and its agents harmless from any loss or claim of liability during any showing or open house, other than if proven to have been the result of broker's intentional misconduct. Seller understands and agrees that showings may be conducted by licensees other than the Broker or its agents and that inspectors or appraisers may conduct inspections and appraisals outside the presence of the Broker. Seller further understands and agrees that other licensees and prospective buyers are permitted to photograph and videotape the property unless expressly stated to the contrary.

**2. Listing Price.** The listing price for the PROPERTY shall be _____ dollars or such other price and terms as the SELLER may approve.

**3. Listing Period.** This Agreement shall begin on _____ and end on _____ and may be extended by agreement.

**4. Broker's Fee.** (a) If within the term of this Agreement or any extension the PROPERTY is sold or the BROKER procures a buyer who is ready, willing and able to buy at a price and on the terms set forth herein or on such other price and terms as the SELLER may agree, the BROKER shall be due a fee of <u>Six (6%)</u>          percent of the selling price, whether or not the transaction is completed or title passes. Said fee shall be paid at the time set for closing and may be deducted from amounts held by BROKER as escrow agent. The aforesaid fee shall also be due upon sale of the property to any person who was introduced to the PROPERTY during the aforesaid term or any extension or who entered into an agreement to purchase during the term, during any extension or within _____ days after expiration of the term or any extension, regardless of the date that title passes, except if the SELLER has entered into an exclusive agreement with another broker in good faith, in which case the BROKER shall be entitled to receive only the difference between the fee set forth herein and any lesser fee paid to the other broker. If any deposit is retained by the SELLER as liquidated damages for default by the buyer under any agreement for sale of the PROPERTY, the BROKER shall be due one-half (1/2) of the amount so retained, but not more than an amount equal to the full commission that would have been paid to BROKER if a sale had been completed.

(b) SELLER shall not pay any other broker for services in connection with sale of the PROPERTY nor give any instruction that reduces the BROKER'S fee, except if the BROKER has given written consent. Acceptance of escrowed funds shall not constitute consent. Should SELLER






violate the foregoing provision and BROKER initiates or is caused to participate in any lawsuit, arbitration or other proceeding, including an interpleader action, BROKER shall be reimbursed by SELLER: (i) for BROKER'S reasonable attorneys' fees and costs; and (ii) to receive from SELLER interest at the legal rate on the amount due BROKER.

(c) All disputes, claims or controversies arising out of or related to this Agreement shall, upon demand of either party, be submitted for binding arbitration, to the local association/board of REALTORS® or, in the event the association/board declines to hear the matter, to the American Arbitration Association ("AAA") or, upon mutual agreement, to another dispute resolution service. The REALTOR® arbitration proceedings shall be conducted by a panel of three (3) arbitrators according to the then current rules of the association/board of REALTORS® (or, if before AAA, by a single arbitrator according to the consumer arbitration rules, or if not applicable, to the commercial arbitration rules of the AAA), and all proceedings will be conducted at a location in Massachusetts chosen by the arbitrator. Except as provided for proceedings pursuant to paragraph (b), reasonable attorneys' fees and costs shall be awarded to the generally prevailing party in the arbitration or lawsuit. Should either party file a claim for violation of General Laws Chapter 93A, the prevailing party (including any agent of the BROKER) shall be entitled to recover reasonable attorneys' fees and costs, but no fees and costs shall be recovered in the event that a tender of settlement was made in advance of suit, but rejected, and the court or arbitrator determines that the rejected tender was reasonable in relationship to the injury actually suffered.

**5. Broker Cooperation.** BROKER hereby advises SELLER that BROKER will offer compensation to cooperating licensees as follows: buyer's agents 2_____% of the selling price; facilitators (non-agents) 2_____% of the selling price. If subagency will be offered, Consent To Subagency form must be signed. SELLER hereby authorizes the BROKER to disclose to prospective buyers whether an offer has been submitted on the PROPERTY and to disclose whether the offer is from a buyer introduced to the PROPERTY by the listing agent, by another licensee associated with the BROKER, or by a cooperating broker. Disclosure of the price and other terms of any offer shall remain confidential until closing, unless otherwise authorized by SELLER.

**6. Broker's Duties.** The BROKER agrees to use reasonable efforts in marketing the PROPERTY and agrees to list the PROPERTY with the MLSPIN_____ multiple listing service. The BROKER shall have no obligation to continue to market the PROPERTY after an offer has been accepted. The BROKER is not hired as a property inspector, tax advisor or attorney and if such services are desired SELLER should hire professionals. It shall not constitute a violation of any duty owed by the BROKER or by any agent associated with the BROKER to advise a prospective buyer of the availability of a competing property or to assist a buyer with the purchase of another property.

**7. Additional Terms.**

This listing Agreement and any sale of the property is subject to and conditioned upon approval by the United States Bankruptcy Court.

DATED

*Arthur Richton*
dotloop verified
01/03/19 2:30 PM EST
8NRU-WGME-DEWP-0EE1

BROKER Or Authorized Representative

SELLER Or Authorized Representative

SELLER Or Authorized Representative


©1999, 2002, 2004, 2005, 2007, 2008, 2010, 2015 MASSACHUSETTS ASSOCIATION OF REALTORS®

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 18-30938-EDK |
| DISHANDA CALLANDS ROBINSON | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Gary M. Weiner, Esq. do hereby certify that on the 14th day of January, 2018, a copy of the foregoing Chapter 7 Trustee's Application to Retain BK Global Real Estate Services and Teamwork Realty Group, LLC as Real Estate Broker was mailed via first class mail, postage pre-paid, or via electronic mail to the following:

Richard King, United States Trustee
USTPRegion01.WO.ECF@USDOJ.GOV

Debtor

Dishanda Callands Robinson
28 Jennings Street.
Springfield, MA 01119

Debtor's Counsel

Eric D. Kornblum, Esq.
Edkclientsbk@gmail.com

Interested Parties

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk VA 23541
claims@recoverycorp.com

Americredit Financial Services, Inc.
dba GM Financial
PO Box 183853
Arlington TX 76096

Richard T. Mulligan, Esq.
Attorney for Wells Fargo Bank, N.A.
mabk@harmonlaw.com

BK Global Real Esate Services
1095 Broken Sound Parkway, N.W.
Suite 100
Boca Raton, FL 33487

Arthur Richton
Teamwork Realty Group, LLC
175 Dwight Road Suite 204
Longmeadow, MA 01106

/s/ Gary M. Weiner, Esq.